UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J<small>AMIE</small> F<small>ERGUSON</small>,

   Plaintiff,             Hon. Robert J. Jonker

v.                    Case No. 1:24-cv-875

C<small>OMMISSIONER OF</small>
S<small>OCIAL</small> S<small>ECURITY</small>,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

   The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 225 (6th Cir. 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record

substantial evidence supporting that decision.  *Id.* at 224-25.  Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 898 (6th Cir. 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018).  This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398 (6th Cir. 2016).

## BACKGROUND

Plaintiff was 39 years of age on her alleged disability onset date.  (ECF No. 6-4 at PageID.169).  She successfully obtained her general education degree (GED) and worked previously as a debt collector, medical biller, and in customer service. (*Id.* at PageID.179-80).  Plaintiff applied for benefits on January 10, 2020, alleging that she had been disabled since January 18, 2019, due sarcoidosis and bipolar disorder.  (*Id.* at PageID.169).

Following two administrative hearings, ALJ Manh Nguyen, in an opinion dated September 1, 2021, determined that Plaintiff did not qualify for disability benefits. (*Id.* at PageID.197-216). Plaintiff appealed, and the Appeals Council vacated the decision and remanded the case to the ALJ to further evaluate Plaintiff's alleged symptoms and provide rationale in accordance with the disability regulations. (*Id.* at PageID.219-220). Following another administrative hearing, ALJ Nguyen, in an opinion dated August 29, 2023, again concluded that Plaintiff was not entitled to disability benefits. (ECF No. 6-2 at PageID.38-62). The Appeals Council declined to review this decision, rendering it the Commissioner's final decision in the matter. (*Id.* at PageID.20-26). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. § 404.1545.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 315 (6th Cir. 2020).

In this case, the ALJ determined that Plaintiff suffers from: (1) degenerative disc disease of the lumbar spine with radiculopathy; (2) sarcoidosis of the lung; (3) osteoarthritis of the right hand; (4) status-post right knee injury; (5) headaches; (6) obesity; (7) bipolar disorder; (8) traumatic brain injury; and (9) attention deficit hyperactivity disorder. (ECF No. 6-2 at PageID.44). The ALJ further determined that the severe impairments, whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.* at PageID.44-47).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she cannot climb ladders, ropes, or scaffolds, kneel, or crawl; (2) she can occasionally climb ramps and stairs; (3) she can frequently stoop, crouch, and

balance, reach, handle, and finger; (4) she must not operate moving machinery or perform commercial driving and cannot tolerate exposure to concentrated occupational atmospheric conditions; (5) she can never work around hazards such as unprotected heights or uncovered, unguarded moving machinery; (6) she cannot work at a production-rate pace such as assembly line work; (7) she can tolerate occasional changes in a routine work setting; (8) she can occasionally interact with supervisors and coworkers, but she must have no interactions with the general public. (*Id.* at PageID.47).

At step five, the ALJ concluded that Plaintiff could perform various jobs that existed in significant numbers in the national economy. (*Id.* at PageID.54-55). Accordingly, the ALJ concluded that Plaintiff was not disabled from January 18, 2019 through the date of the decision. (*Id.* at PageID.55).

## DISCUSSION

Plaintiff raises two issues in her appeal: (1) the ALJ committed reversible error by finding that Plaintiff's RFC was for work at the light exertional level; and (2) the ALJ committed reversible error by relying on inaccurate vocational testimony. (ECF No. 13 at PageID.1119). The undersigned addresses each in turn.

### I.   The ALJ's RFC Assessment

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform

-5-

"work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

Here, the ALJ found that Plaintiff retained the ability to perform a limited range of light work with several additional limitations. Plaintiff argues that this finding is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ erred in evaluating the opinions of (1) Kyle West, a limited license psychologist (LLP), and Melanie Mitchell, Psy.D.; (2) George Ronan, Ph.D.; and (3) Marissa Ollech, a licensed master social worker (LMSW). She also contends that the ALJ erred in evaluating her subjective complaints.

### A. Medical Opinions

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2). The regulations explain "supportability" in the following terms: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The regulations explain "consistency" in the following terms: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Plaintiff appears to suggest that the Court should apply a different legal standard and that the treating physician rule should still apply after *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). She makes vague statements like "the time has come to stop giving ALJs an evidentiary credit card with no limits or bounders[.]" (ECF No. 13 at PageID.1121).

Plaintiff, however, fails to adequately explain how *Loper Bright* affects this case. Her argument is poorly developed and confusing. Several courts that have considered *Loper Bright* in the social security context have concluded that it does not change the landscape in these cases. *See Williams v. O'Malley*, No. 23-35358, 2024 WL 3519774, at *1 n.1 (9th Cir. July 24, 2024) (noting that *Loper Bright* does not undercut the Ninth Circuit's holding in *Cross v. O'Malley*, 89 F.4th 1211 (9th Cir. 2024) and that the Social Security Administration's 2017 medical-evidence regulations fall within the broad scope of the Commissioner's authority under the Social Security Act); *Hicks v. Comm'r of Soc. Sec. Admin.*, No. 7:23-CV-70, 2024 WL 3901190, at *2 n.3 (E.D. Ky. Aug. 19, 2024) (noting that "social security cases post-dating Loper have afforded the same level of deference to the Agency"). And contrary to Plaintiff's apparent argument, "the treating physician rule no longer applies." *See Takacs v. Kijakazi*, No. 1:20-cv-02120, 2022 WL 447700, at *9 (N.D. Ohio Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 445767 (N.D. Ohio Feb. 14, 2022) (internal quotation marks omitted). Accordingly, Plaintiff's arguments with respect to *Loper Bright* and the proper standard to review medical opinions are without merit.

    i.    <u>Mr. West and Dr. Mitchell's Opinion</u>

Plaintiff underwent psychological testing on November 19, December 4, and December 14, 2018, with Mr. West and Dr. Mitchell. (ECF No. 6-10 at PageID.608). Five months later, Mr. West and Dr. Mitchell issued a twelve-page report summarizing their findings and conclusions. (*Id.* at PageID.608-619). They

-8-

diagnosed Plaintiff with Bipolar I Disorder and recommended an immediate referral for a psychiatric evaluation to evaluate her medications. (*Id.* at PageID.618). They further concluded that "[i]t may be necessary for [Plaintiff] to take steps to pursue disability assistance . . . if she is unable to sustain her current job" and that her symptoms "are likely to influence her performance at work as well as her ability to relate well to coworkers and management." (*Id.* at PageID.619).

The ALJ found Mr. West and Dr. Mitchell's opinion unpersuasive for three reasons. (ECF No. 6-2 at PageID.52-53). First, the opinion was based on objective findings from 2018, which is outside the relevant time period. Second, the treatment records from within the relevant time period demonstrate that Plaintiff had better control of her bipolar symptoms through treatment. Third, the report was equivocal because it used terms such as "may be necessary" and "it is likely."

Plaintiff takes issue with the ALJ's finding that the opinion was unpersuasive because the opinion relied on objective findings outside the relevant time period. But the ALJ did not just discard the opinion because the examinations occurred before the alleged onset date. The ALJ relied on medical treatment records from the relevant time period that established Plaintiff had better control of her symptoms as a result of her treatment.

Contrary to Mr. West and Dr. Mitchell's findings, Plaintiff's medical records consistently show that Plaintiff had generally normal memory, cognition, attention, judgment, and speech. (*See, e.g.,* ECF No. 6-10 at PageID.651, 655, 660, 663, 700, 720). She generally presented herself as cooperative and friendly at appointments.

(*See, e.g.,* ECF No. 6-10 at PageID.720; ECF No. 6-11 at PageID.768). Perhaps most importantly, Plaintiff's primary-care provider noted that Plaintiff's bipolar disorder was managed effectively with her medication. (*See, e.g.,* ECF No. 6-11 at PageID.863, 871 877, 1084, 1091). Accordingly, substantial evidence supports the ALJ's conclusion that Mr. West and Dr. Mitchell's opinion was inconsistent with the medical treatment records from the relevant time period.

    ii.    <u>Dr. Ronan's Opinion</u>

On September 16, 2020, Dr. Ronan conducted a consultative examination of Plaintiff. Following the examination, Dr. Ronan believed that Plaintiff met the criteria of Bipolar II Disorder and opined:

> Based upon today's examination, the claimant is likely to understand, retain, and follow simple instructions. She did not demonstrate problems with concentration or persistence. She drove to the evaluation today. She reported being able to manage most social interactions and daily living tasks. She reported being able to independently manage her finances. She also reported an inability to maintain full-time employment due to mood instability.

(ECF No. 6-10 at PageID.721-722). Dr. Ronan also indicated that Plaintiff's prognosis was "[g]uarded" because Plaintiff's "mood instability has interfered with her ability to maintain stable employment." (*Id.* at PageID.722).

The ALJ found Dr. Ronan's opinion partially persuasive. (ECF No. 6-2 at PageID.49-50). He agreed with Dr. Ronan's assessment that Plaintiff should be limited to simple instructions. But the ALJ found other portions of Dr. Ronan's opinion to be unpersuasive because he simply summarized Plaintiff's subjective complaints and used undefined terminology such as "stable employment."

Plaintiff argues that the ALJ erred by discrediting the opinion because the opinion "simply recorded [Plaintiff's] remarks during that exam." (ECF No. 13 at PageID.1119-1120). The undersigned disagrees. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions[.]" 20 C.F.R. § 404.1513(a)(2). Moreover, "[s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work" are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i). Here, the remaining portion of Dr. Ronan's purported opinion did not include any work-related restrictions and did not constitute a medical opinion to which an ALJ must assign weight. Accordingly, Plaintiff's argument is without merit.

### iii. Ms. Ollech's Opinion

Ms. Ollech counselled Plaintiff in individual therapy once a month beginning on November 10, 2020. In May 2021, after six months of therapy, Ms. Ollech completed a Mental Impairment Questionnaire. (ECF No. 6-11 at PageID.780-785). She opined that Plaintiff had no ability to function in regard to her ability to accept instructions or respond to supervisors. She further opined that limitations existed in activities of daily living, social functioning, and concentration, persistence, and pace, as well as that Plaintiff would be absent from work more than four days per month.

> The ALJ found Dr. Ollech's opinion unpersuasive. He reasoned:
>
> This opinion is inadequately supported, as it contains very little narrative discussion of the claimant's diagnoses and/or reference to objective abnormalities to support the extreme and disabling limitations contained therein (Id.). In addition, the opinion is not supported by Ms. Ollech's own treatment notes, which generally reveal appropriate affect, normal attention, concentration, memory, speech, thoughts, and language, average estimated intelligence, and normal abstraction, insight, and judgment on examination, and noted improvement of insight and mood symptoms with treatment (Exhibit 14F). In addition, the opinion is inconsistent with the preponderance of the evidence of record, which demonstrates normal alertness and orientation, cooperative behavior, appropriate dress, good hygiene, normal eye contact, and intact thought processes and judgment, estimated average intelligence, and intact attention, concentration, memory, and insight.

(ECF No. 6-2 at PageID.53).

Plaintiff argues that the ALJ erred because the questionnaire "was detailed regarding what she had observed in the course of her treatment of her patient, and she concluded that [Plaintiff] was unable to meet work standards in 11 out 16 categories of mental aptitudes required for success at unskilled work[.]" (ECF No. 13 at PageID.1122).

But Plaintiff makes no attempt to address the actual reasons that the ALJ did not find Ms. Ollech's opinion unpersuasive. First, the questionnaire was largely a check-the-box form, which is generally not persuasive evidence. *See Ellars v. Comm'r of Soc. Sec.,* 647 F. App'x 563, 566 (6th Cir. 2016). Second, Ms. Ollech's own treatment notes did not support her opinion, (s*ee, e.g.,* ECF No. 6-11 at PageID.799-800). Again, Plaintiff makes no attempt to address the medical record. In the

opinion of the undersigned, the reasons provided by the ALJ are sufficient to discredit Ms. Ollech's opinion.

### B. Subjective Complaints

At the administrative hearing, Plaintiff reported that she was unable to maintain past employment because she would yell, act insubordinately, and had manic and rage episodes at her prior job. She further reported that she spends 15 to 16 hours in bed, falls down for no apparent reason, and has pain in her back, knees, and hands.

A claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard. First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit her ability to perform work-related activities. *Id.* at *4-9.

As is well recognized, subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms. *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004). But, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record. In this respect, it is

recognized that the ALJ s credibility assessment must be accorded great weight and deference.

Here, the ALJ found that Plaintiff's mental impairments had improved with treatment. The ALJ further found that objective findings did not support Plaintiff's claims of disabling physical limitations. It is not for this Court to reevaluate such evidence anew, and so long as the ALJ s determination is supported by substantial evidence, it must stand. See, e.g., *Ritchie v. Comm'r of Soc. Sec.,* 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are virtually 'unchallengeable.'").

While the Court does not dispute that Plaintiff experiences significant limitations resulting from her emotional impairments, but. as noted above, the evidence does not support Plaintiff's testimony or assertions that she is limited to the extent alleged or is completely unable to work. The Court is not permitted to re-weigh the evidence. The ALJ articulated a clear rationale in support of his decision to discount Plaintiff's subjective allegations and the ALJ's conclusions and rationale are supported by substantial evidence. Accordingly, this argument is rejected.

In sum, the record establishes that Plaintiff symptoms had improved with treatment, and she had generally normal clinical findings from her examinations during the relevant period. In the opinion of the undersigned, the ALJ's RFC assessment is supported by substantial evidence.

## II. The ALJ's Reliance on VE Testimony

Plaintiff contends that the ALJ's decision is flawed because one of the jobs the VE identified—marker—is obsolete. As support, Plaintiff cites a blog from a California disability attorney relying on the Department of Labor's Occupational Information Network (O*NET).

Plaintiff's argument is without merit for two reasons. First, the Sixth Circuit rejected a similar challenge to the one Plaintiff raises here, which asserted that the VE's testimony was unreliable because it was unlikely that a job described in the DOT currently existed in significant numbers in the national economy. *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 318 (6th Cir. 2020). In *O'Neal*, the Sixth Circuit affirmed that "the DOT data can establish the existence of jobs in the national economy in significant numbers" and that O*Net is not listed as a reliable source for adjudicating disability claims. *Id.* at 317. Here, the ALJ properly relied on the VE's testimony and confirmed that it was consistent with the DOT. The ALJ, therefore, complied with the requirements and based his decision on substantial evidence.

Second, even if the ALJ could not rely on marker as a job, the ALJ still found that Plaintiff could perform jobs of a collator operator with 33,000 jobs nationally and a router with 25,000 jobs nationally. This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.,* 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Plaintiff does not address or dispute this finding.

Therefore, the 58,000 jobs in the instant case constitutes a signific number of jobs in the national economy.   Accordingly, this claim of error lacks merit.

### CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    Respectfully submitted,

Date: September 3, 2025                      /s/ Phillip J. Green
                                                  PHILLIP J. GREEN
                                                  United States Magistrate Judge